**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1601
_____

JIN-PYONG PETER YIM,
                  Appellant

v.

NATIONAL INSTITUTES OF HEALTH

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:21-cv-07031)
District Judge: Honorable Zahid N. Quraishi

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2023
Before: HARDIMAN, PORTER, and FREEMAN, *Circuit Judges*

(Opinion filed: October 13, 2023)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Jin-Pyong Peter Yim, an independent journalist, filed a Freedom of Information Act lawsuit against the National Institutes of Health. NIH issues non-binding guidelines for treating patients with COVID-19, with the approval of a panel of experts. Yim believes that NIH issued a guideline on the use of ivermectin, an antiparasitic drug, without an approving vote by the panel. His FOIA suit is aimed at getting NIH to admit that it did so. The District Court held that NIH's response to Yim's FOIA request was satisfactory and granted summary judgment to NIH. We agree and will affirm.

I.

In response to the COVID-19 pandemic, the National Institutes of Health created the COVID-19 Treatment Guidelines, a set of non-binding recommendations for clinicians treating patients with COVID-19. NIH develops the guidelines through its COVID-19 Treatment Guidelines Panel, a panel of experts appointed by the agency. "To be included in the Guidelines, a recommendation statement must be endorsed by a majority of [the Panel's] voting members; this applies to recommendations for and against treatments and cases where there is insufficient evidence to recommend either for or against treatments. Updates to existing sections that do not affect the rated recommendations are approved by Panel co-chairs without a Panel vote."[1]

---

[1] *COVID 19 Treatment Guidelines: Guidelines Development*, National Institutes of Health (last updated December 1, 2022), https://www.covid19treatmentguidelines.nih.gov/about-the-guidelines/guidelines-development/

On January 14, 2021, NIH released a recommendation statement about the antiparasitic drug ivermectin.[2] The statement explained the reasoning behind the recommendation, briefly summarized the then-existing clinical data, and concluded: "[t]he COVID-19 Treatment Guidelines Panel (the Panel) has determined that currently there are insufficient data to recommend either for or against the use of ivermectin for the treatment of COVID-19."[3, 4]

Independent journalist Jin-Pyong Peter Yim is convinced that NIH added this 2021 ivermectin recommendation to the Guidelines without the required vote of the Panel. To test his theory, he filed a request for records under the Freedom of Information Act. His request sought "All updates to the Coronavirus Disease 2019 (COVID-19) Treatment Guidelines that were endorsed by a vote of the Panel. (Date Range for Record Search: From 01/01/2012 to 01/28/2021)". The only update to NIH's guidelines during that time was the recommendation on ivermectin. So the ivermectin recommendation would be responsive only if it had received a Panel vote.

---

[2] *The COVID-19 Treatment Guidelines Panel's Statement on the Use of Ivermectin for the Treatment of COVID-19*, National Institutes of Health (last updated January 14, 2021), https://files.covid19treatmentguidelines.nih.gov/guidelines/archive/statement-on-ivermectin-01-14-2021.pdf

[3] *Id.*

[4] NIH's current ivermectin Guideline states that "The Panel recommends against the use of ivermectin for the treatment of COVID-19". *COVID 19 Treatment Guidelines: Ivermectin*, National Institutes of Health (last updated March 6, 2023), https://files.covid19treatmentguidelines.nih.gov/guidelines/section/section_94.pdf

NIH missed its statutory deadline to answer Yim's request, and Yim filed a private FOIA lawsuit on March 31, 2021 to compel the agency to respond. Yim apparently expected NIH to inform him that it had no responsive records, thereby tacitly admitting that its ivermectin recommendation was made without a Panel vote. But to Yim's consternation, when NIH responded to the request by email on April 23, it stated that the information he had requested not only existed but was publicly available on the NIH website. The email included a link to the agency's 2021 ivermectin recommendation. NIH also offered to print out and send Yim the recommendation if he was unable to access it online.

Yim protested, responding by email that "NIH must confirm that the record I requested does not exist." The Assistant U.S. Attorney representing NIH then emailed Yim: she reiterated that the information Yim sought in his FOIA request did in fact exist and was publicly available, explained again where to find it, and offered to help him access it if needed. Undeterred, Yim replied that "NIH's response is not acceptable. I insist that NIH confirm that the record that I requested does not exist." The AUSA again assured him that it did and offered to help him access it. But Yim stated, "I remain convinced that my case against NIH is strong."

Yim and the AUSA continued to communicate but were unable to resolve the matter to Yim's satisfaction. Finally, NIH moved for summary judgment. The District Court found that NIH had conducted a reasonable and good-faith search for records

responsive to Yim's FOIA request and that it had produced all non-exempt records it found. So the District Court granted summary judgment to NIH. Yim appeals.[5]

II.

We review a district court's summary judgment order in a FOIA case using a two-tiered process. *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007). First, we decide "whether the district court had an adequate factual basis for its determination." *Id.*, quoting *McDonnell v. United States*, 4 F.3d 1227, 1242 (3d Cir.1993) (citations omitted). If it did, we "must then decide whether that determination was clearly erroneous." *Abdelfattah*, 488 F.3d at 182 (citations omitted). Under this standard, we will reverse only "if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *Id.* (quoting *Lame v. U.S. Dep't of Justice*, 767 F.2d 66, 70 (3d Cir.1985)).

III.

To meet its disclosure obligations under the FOIA, an agency must (1) conduct a reasonable search for responsive records and (2) produce the non-exempt records that it finds. *See Abdelfattah*, 488 F.3d 178, 182–86. Yim does not contend that NIH is withholding responsive records; he disputes whether the records he received are in fact responsive to his FOIA request. So our first task is to decide whether the District Court

---

[5] We have jurisdiction under 28 U.S.C. § 1291.

had an adequate factual basis for its determination that NIH's search for responsive records was reasonable.

For an agency's search to be reasonable, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).[6] Here, NIH has searched for and produced the only record that could possibly be responsive to Yim's request: the 2021 recommendation statement about ivermectin. If the statement was endorsed by a vote of the Guidelines Panel, it is responsive to Yim's request.

We conclude that the NIH FOIA Officer had sufficient reason to believe that the ivermectin statement was responsive to Yim's request. On its face, the statement appears responsive because it purports to be a recommendation of the COVID-19 Treatment Guidelines Panel. *See* note 2, above. And because it was a new recommendation finding insufficient evidence for or against a particular treatment, NIH procedures would have required that the ivermectin recommendation be subject to a majority vote of the panel. *See* note 1, above. Under these circumstances—and without any evidence provided by

---

[6] Agencies typically meet their burden by submitting affidavits or declarations describing how the search was conducted—such as the locations that were searched and the search terms that were used—and affirming that all files likely to contain responsive materials were searched. *Abdelfattah*, 488 F.3d at 182. NIH's declaration does not contain such details. *See* NIH Supp. App'x, ECF. No. 20 at SA 038–042. But the parties agree that the only record that might even possibly be responsive to Yim's request is the one that NIH searched for and produced: the 2021 recommendation statement about ivermectin. So the lack of these details in NIH's declaration does not bear on the reasonableness of its search.


Yim to suggest otherwise—the NIH FOIA Officer was reasonable in believing that the record was what it purported to be, and in assuming that NIH had followed its own procedures in creating it. So the District Court had an adequate factual basis for its determination that NIH's search for records was reasonable.

Because the District Court had an adequate factual basis for its determination, we will disturb that determination only if Yim has shown that it was clearly erroneous. *Abdelfattah*, 488 F.3d at 182. He has not.

First, Yim argues that the District Court erred "because there is uncertainty as to the existence of the Requested Record." ECF No. 10 at 12. As evidence of this, he states that (1) at least one email from NIH contained an incorrect hyperlink to the 2021 ivermectin recommendation; (2) a link to a website is not an acceptable form of producing a record because a website's contents can change; and (3) there are slight differences in wording between the cover letters and emails that NIH sent to him—such as a cover letter that notes the date range of his FOIA request and an email that does not. *See id.* at 12–15. These arguments are unavailing. Yim admits that on September 1, 2021, NIH sent him the record he requested, in the form that he had requested it. Joint App'x, ECF No. 8 at JA 54 ("NIH provided the record in the format requested by Yim"). Under the FOIA, that is all that the agency need do. Second, Yim argues that the trivial differences between NIH's cover letters and emails constitute a genuine issue of material fact. ECF No. 10 at 15–16. As we have just explained, they do not. Finally, Yim argues that the District Court erred when it ruled that its authority under the FOIA was limited to

requiring an agency to produce records. ECF No. 10 at 16–17. Yim appears to argue that a court can also compel an agency to confirm to a FOIA requester that it has no records responsive to a FOIA request. We need not decide that issue because NIH has produced records in response to Yim's request.

Ultimately, Yim has produced no evidence suggesting that the agency's search for records was unreasonable, or that the records it produced are unresponsive to his request. His underlying belief—that NIH is deceiving the public about whether its 2021 ivermectin recommendation was approved by its panel of experts—is based on speculation, not evidence. Under the Freedom of Information Act, more than speculation is required.

## IV.

For these reasons, we will affirm the judgment of the District Court.