No. 23-1601

In The
United States Court of Appeals
for the Third Circuit

Jin-Pyong Peter Yim
*Petitioner, Appellant*
v.

National Institutes of Health
*Petitionee, Appellee*

On appeal from the
United States District Court
for the District of New Jersey

Petition for Panel Rehearing and Rehearing En Banc
Under Fed. R. App. P. 35(b) and 40(a)

Jin-Pyong Peter Yim
*in proper person*
912 Primrose Ct.
Belle Mead, NJ 08502
(908)512-1256

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I    National Institutes of Health responded to the Freedom of Information Act request in an August 27, 2021 email. . . . . . . . 5

II   NIH then altered the August 27, 2021 email and entered it into evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III  This court erred when it relied on NIH statements as to the existence of the requested record. . . . . . . . . . . . . . . . . . . . . 5

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

COMBINED CERTIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . 6

# TABLE OF AUTHORITIES

Cases                                                                                    Page

   *Jones v. F.B.I.*, 41 F.3d 238 (6th Cir. 1994) . . . . . . . . . . . . . . 2

Constitutional Provisions, Statutes and Rules

   Title 5, United States Code

      § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   Federal Rules of Appellate Procedure

      Rule 35(b), 40(a)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Other Authorities

   *The COVID-19 Treatment Guidelines Panel's Statement on the Use of Ivermectin for the Treatment of COVID-19*, January 14, 2021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# INTRODUCTION

The court below erred in ruling that National Institutes of Health ("NIH") complied with 5 U.S.C. § 552 ("FOIA") requiring the appeal. The court below could not be certain of NIH compliance because NIH altered evidence, for instance, the Appellant Brief argued. In its opinion ("Opinion"), this court disagreed:

> "Ultimately, Yim has produced no evidence suggesting that the agency's search for records was unreasonable, or that the records it produced are unresponsive to his request. His underlying belief—that NIH is deceiving the public about whether its 2021 ivermectin recommendation was approved by its panel of experts—is based on speculation, not evidence. Under the Freedom of Information Act, more than speculation is required." (Addendum at AD 10).

That statement is true but irrelevant. In fact, the question before this court was whether the NIH FOIA response was deceptive given the mountain of NIH misrepresentations including the alteration of evidence. Rehearing of this case is requested for that reason.

# STATEMENT OF PURPOSE

The petitioner, Jin-Pyong Peter Yim ("Yim"), in Proper Person, respectfully requests the granting of the instant Petition for Panel Rehearing and Rehearing En Banc Under, Fed. R. App. P. 35(b), 40(a)). In support

of this petition, Yim represents that the panel's non-precedential opinion (attached as Addendum) conflicts with *Jones v. F.B.I.*, 41 F.3d 238 (6th Cir. 1994): "[The] presumption [of good faith] may be overcome where there is evidence of bad faith in the agency's handling of the FOIA request.". Consideration by the full court is therefore necessary.

In addition, the Petitioner expresses the belief that the panel's opinion involves a question of exceptional importance: Did the NIH illegally subvert a FOIA inquiry into whether it deceived the nation on ivermectin?

## STATEMENT OF FACTS

On October 13, 2021, Yim entered an email ("August 27 Email") into evidence. The email was sent on August 27, 2021 from the attorney representing the NIH, to Yim. The email provided the following statement ("August 27 Statement"):

> "Please be advised that the link you supplied, to wit [NIH Link], is a valid NIH link that directs you to the document responsive to your FOIA request (#55822)." (ECF No. 8 at JA36).

2

NIH Link [1] is a hyperlink that correctly specifies the address of the NIH ivermectin recommendation ("Statement on Ivermectin"). *See The COVID-19 Treatment Guidelines Panel's Statement on the Use of Ivermectin for the Treatment of COVID-19*, January 14, 2021. Due to the construction of the FOIA request ("FOIA Request"), the August 27 Statement signified that the Statement on Ivermectin had been endorsed by a vote of the "Panel".

On September 8, 2021, NIH entered evidence into the record of the August 27 Email. The NIH evidence of the August 27 Email was altered in the following respect: NIH Link was replaced by a different URL ("NIH Link Altered 1"). [2](ECF No. 8 at JA38).

NIH Link Altered 1 is nearly identical in appearance to NIH Link. However, each "hyphen-minus" character in NIH Link (Unicode value U+002D) is replaced by the "hyphen" character in NIH Link Altered 1 (Unicode value U+2010). As such, NIH Link Altered 1 does not provide the address of the Statement on Ivermectin.

On September 24, 2021, NIH submitted an excerpt of the August 27 Email to the court in the Defendant's Statement of Material Facts

---

[1] NIH Link is "https://files.covid19treatmentguidelines.nih.gov/guidelines/archive/statement-on-ivermectin-01-14-2021.pdf"

[2] NIH Link Altered 1 is "https://files.covid19treatmentguidelines.nih.gov/guidelines/archive/statement‐on‐ivermectin‐01‐14‐2021.pdf"

Pursuant to Local Rule 56.1 In Support of Defendant's Motion for Summary Judgement. The email excerpt misrepresented NIH Link. In the excerpt, NIH Link is replaced by a different URL ("NIH Link Altered 2"). [3] (ECF No. 8 at JA44)

In the NIH Link Altered 2, "archives" replaces "archive" and "invermectin" replaces "ivermectin" in NIH Link. As such, NIH Link Altered 2 does not provide the internet address of the Statement on Ivermectin.

On August 27, 2021, Yim requested for NIH to provide a signed letter with the August 27 Statement. (ECF No. 8 at JA37). NIH was unable to provide that letter. Instead, NIH provided a letter with a meaningless statement ("August 31 Letter"). The FOIA Letter stated:

> "Please be advised that [NIH Link], is a valid NIH link that directs you to the document responsive to your FOIA request **date range from 1/01/2021 to 0/28/2021** (#55822)." (ECF No. 8 at JA40).

Emphasis is added to indicate text in the August 31 Letter not found in the August 27 Statement.

---

[3] NIH Link Altered 2 is "https://files.covid19treatmentguidelines.nih.gov/guidelines/archives/statement-on-invermectin-01-14-2021.pdf"

# ARGUMENT

## I    National Institutes of Health responded to the Freedom of Information Act request in an August 27, 2021 email.

NIH complied with FOIA when it provided NIH Link to Yim, the court below ruled.(ECF No. 10 at JA 10). NIH Link was provided to Yim in the August 27 Email. (ECF No. 10 at JA5).

## II    NIH then altered the August 27, 2021 email and entered it into evidence.

The August 27 Email was altered by NIH. The altered version of the email was then entered into evidence by NIH on September 8, 2021. (ECF No. 8 at JA 38). While the authentic email shows that NIH provided the Statement on Ivermectin in response to the FOIA Request, evidence provided by NIH does not show that NIH provided the Statement on Ivermectin in response to the FOIA Request. These facts are indisputable.

## III    This court erred when it relied on NIH statements as to the existence of the requested record.

NIH alteration of evidence is an extraordinary reality. This court cannot find that NIH complied with FOIA by relying on NIH assertions when

NIH altered evidence of the FOIA response itself. This conclusion is self-evident.

The Opinion is oblivious to the facts and poorly reasoned.

## CONCLUSION

This Court must grant this petition for rehearing.

## COMBINED CERTIFICATIONS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because it uses a proportionally spaced typeface: Latex in 14 point New Century Schoolbook.

3. The text of the electronic and paper versions of the foregoing brief are identical.

4. No virus was reported when this brief was transmitted to a Gmail account.

5. On November 24, 2023, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Dated: November 24, 2023

    Respectfully submitted,

    /s/ Jin-Pyong Peter Yim

    Jin-Pyong Peter Yim

    In proper person

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1601
_____

JIN-PYONG PETER YIM,
                     Appellant

v.

NATIONAL INSTITUTES OF HEALTH
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:21-cv-07031)
District Judge: Honorable Zahid N. Quraishi
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2023
Before: HARDIMAN, PORTER, and FREEMAN, *Circuit Judges*
_____

**JUDGMENT**
_____

This cause came to be considered on the record from the United States District Court for the District of New Jersey and was submitted pursuant to Third Circuit LAR 34.1(a) on September 26, 2023. On consideration whereof, it is now hereby

ORDERED and ADJUDGED by this Court that the order of the District Court entered March 29, 2023 be and the same is hereby affirmed. All of the above in accordance with the opinion of this Court.

ATTEST:

s/ Patricia S. Dodszuweit
Clerk

Dated: October 13, 2023

Case: 23-1601   Document: 23-1   Page: 12   Date Filed: 10/13/2023

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1601
_____

JIN-PYONG PETER YIM,
                               Appellant

v.

NATIONAL INSTITUTES OF HEALTH

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3:21-cv-07031)
District Judge:  Honorable Zahid N. Quraishi

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 26, 2023
Before:  HARDIMAN, PORTER, and FREEMAN, *Circuit Judges*

(Opinion filed: October 13, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Jin-Pyong Peter Yim, an independent journalist, filed a Freedom of Information Act lawsuit against the National Institutes of Health. NIH issues non-binding guidelines for treating patients with COVID-19, with the approval of a panel of experts. Yim believes that NIH issued a guideline on the use of ivermectin, an antiparasitic drug, without an approving vote by the panel. His FOIA suit is aimed at getting NIH to admit that it did so. The District Court held that NIH's response to Yim's FOIA request was satisfactory and granted summary judgment to NIH. We agree and will affirm.

I.

In response to the COVID-19 pandemic, the National Institutes of Health created the COVID-19 Treatment Guidelines, a set of non-binding recommendations for clinicians treating patients with COVID-19. NIH develops the guidelines through its COVID-19 Treatment Guidelines Panel, a panel of experts appointed by the agency. "To be included in the Guidelines, a recommendation statement must be endorsed by a majority of [the Panel's] voting members; this applies to recommendations for and against treatments and cases where there is insufficient evidence to recommend either for or against treatments. Updates to existing sections that do not affect the rated recommendations are approved by Panel co-chairs without a Panel vote."[1]

---

[1] *COVID 19 Treatment Guidelines: Guidelines Development*, National Institutes of Health (last updated December 1, 2022), https://www.covid19treatmentguidelines.nih.gov/about-the-guidelines/guidelines-development/

2

AD 4

On January 14, 2021, NIH released a recommendation statement about the antiparasitic drug ivermectin.[2] The statement explained the reasoning behind the recommendation, briefly summarized the then-existing clinical data, and concluded: "[t]he COVID-19 Treatment Guidelines Panel (the Panel) has determined that currently there are insufficient data to recommend either for or against the use of ivermectin for the treatment of COVID-19."[3, 4]

Independent journalist Jin-Pyong Peter Yim is convinced that NIH added this 2021 ivermectin recommendation to the Guidelines without the required vote of the Panel. To test his theory, he filed a request for records under the Freedom of Information Act. His request sought "All updates to the Coronavirus Disease 2019 (COVID-19) Treatment Guidelines that were endorsed by a vote of the Panel. (Date Range for Record Search: From 01/01/2012 to 01/28/2021)". The only update to NIH's guidelines during that time was the recommendation on ivermectin. So the ivermectin recommendation would be responsive only if it had received a Panel vote.

---

[2] *The COVID-19 Treatment Guidelines Panel's Statement on the Use of Ivermectin for the Treatment of COVID-19*, National Institutes of Health (last updated January 14, 2021), https://files.covid19treatmentguidelines.nih.gov/guidelines/archive/statement-on-ivermectin-01-14-2021.pdf

[3] *Id.*

[4] NIH's current ivermectin Guideline states that "The Panel recommends against the use of ivermectin for the treatment of COVID-19". *COVID 19 Treatment Guidelines: Ivermectin*, National Institutes of Health (last updated March 6, 2023), https://files.covid19treatmentguidelines.nih.gov/guidelines/section/section_94.pdf

3

NIH missed its statutory deadline to answer Yim's request, and Yim filed a private FOIA lawsuit on March 31, 2021 to compel the agency to respond. Yim apparently expected NIH to inform him that it had no responsive records, thereby tacitly admitting that its ivermectin recommendation was made without a Panel vote. But to Yim's consternation, when NIH responded to the request by email on April 23, it stated that the information he had requested not only existed but was publicly available on the NIH website. The email included a link to the agency's 2021 ivermectin recommendation. NIH also offered to print out and send Yim the recommendation if he was unable to access it online.

Yim protested, responding by email that "NIH must confirm that the record I requested does not exist." The Assistant U.S. Attorney representing NIH then emailed Yim: she reiterated that the information Yim sought in his FOIA request did in fact exist and was publicly available, explained again where to find it, and offered to help him access it if needed. Undeterred, Yim replied that "NIH's response is not acceptable. I insist that NIH confirm that the record that I requested does not exist." The AUSA again assured him that it did and offered to help him access it. But Yim stated, "I remain convinced that my case against NIH is strong."

Yim and the AUSA continued to communicate but were unable to resolve the matter to Yim's satisfaction. Finally, NIH moved for summary judgment. The District Court found that NIH had conducted a reasonable and good-faith search for records

responsive to Yim's FOIA request and that it had produced all non-exempt records it found. So the District Court granted summary judgment to NIH. Yim appeals.[5]

## II.

We review a district court's summary judgment order in a FOIA case using a two-tiered process. *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007). First, we decide "whether the district court had an adequate factual basis for its determination." *Id.*, quoting *McDonnell v. United States*, 4 F.3d 1227, 1242 (3d Cir.1993) (citations omitted). If it did, we "must then decide whether that determination was clearly erroneous." *Abdelfattah*, 488 F.3d at 182 (citations omitted). Under this standard, we will reverse only "if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *Id.* (quoting *Lame v. U.S. Dep't of Justice*, 767 F.2d 66, 70 (3d Cir.1985)).

## III.

To meet its disclosure obligations under the FOIA, an agency must (1) conduct a reasonable search for responsive records and (2) produce the non-exempt records that it finds. *See Abdelfattah*, 488 F.3d 178, 182–86. Yim does not contend that NIH is withholding responsive records; he disputes whether the records he received are in fact responsive to his FOIA request. So our first task is to decide whether the District Court

---

[5] We have jurisdiction under 28 U.S.C. § 1291.

5

had an adequate factual basis for its determination that NIH's search for responsive records was reasonable.

For an agency's search to be reasonable, the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).[6] Here, NIH has searched for and produced the only record that could possibly be responsive to Yim's request: the 2021 recommendation statement about ivermectin. If the statement was endorsed by a vote of the Guidelines Panel, it is responsive to Yim's request.

We conclude that the NIH FOIA Officer had sufficient reason to believe that the ivermectin statement was responsive to Yim's request. On its face, the statement appears responsive because it purports to be a recommendation of the COVID-19 Treatment Guidelines Panel. *See* note 2, above. And because it was a new recommendation finding insufficient evidence for or against a particular treatment, NIH procedures would have required that the ivermectin recommendation be subject to a majority vote of the panel. *See* note 1, above. Under these circumstances—and without any evidence provided by

---

[6] Agencies typically meet their burden by submitting affidavits or declarations describing how the search was conducted—such as the locations that were searched and the search terms that were used—and affirming that all files likely to contain responsive materials were searched. *Abdelfattah*, 488 F.3d at 182. NIH's declaration does not contain such details. *See* NIH Supp. App'x, ECF. No. 20 at SA 038–042. But the parties agree that the only record that might even possibly be responsive to Yim's request is the one that NIH searched for and produced: the 2021 recommendation statement about ivermectin. So the lack of these details in NIH's declaration does not bear on the reasonableness of its search.

6

Yim to suggest otherwise—the NIH FOIA Officer was reasonable in believing that the record was what it purported to be, and in assuming that NIH had followed its own procedures in creating it. So the District Court had an adequate factual basis for its determination that NIH's search for records was reasonable.

Because the District Court had an adequate factual basis for its determination, we will disturb that determination only if Yim has shown that it was clearly erroneous. *Abdelfattah*, 488 F.3d at 182. He has not.

First, Yim argues that the District Court erred "because there is uncertainty as to the existence of the Requested Record." ECF No. 10 at 12. As evidence of this, he states that (1) at least one email from NIH contained an incorrect hyperlink to the 2021 ivermectin recommendation; (2) a link to a website is not an acceptable form of producing a record because a website's contents can change; and (3) there are slight differences in wording between the cover letters and emails that NIH sent to him—such as a cover letter that notes the date range of his FOIA request and an email that does not. *See id.* at 12–15. These arguments are unavailing. Yim admits that on September 1, 2021, NIH sent him the record he requested, in the form that he had requested it. Joint App'x, ECF No. 8 at JA 54 ("NIH provided the record in the format requested by Yim"). Under the FOIA, that is all that the agency need do. Second, Yim argues that the trivial differences between NIH's cover letters and emails constitute a genuine issue of material fact. ECF No. 10 at 15–16. As we have just explained, they do not. Finally, Yim argues that the District Court erred when it ruled that its authority under the FOIA was limited to

7

requiring an agency to produce records. ECF No. 10 at 16–17. Yim appears to argue that a court can also compel an agency to confirm to a FOIA requester that it has no records responsive to a FOIA request. We need not decide that issue because NIH has produced records in response to Yim's request.

Ultimately, Yim has produced no evidence suggesting that the agency's search for records was unreasonable, or that the records it produced are unresponsive to his request. His underlying belief—that NIH is deceiving the public about whether its 2021 ivermectin recommendation was approved by its panel of experts—is based on speculation, not evidence. Under the Freedom of Information Act, more than speculation is required.

## IV.

For these reasons, we will affirm the judgment of the District Court.